# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAH ACQUISITION COMPANY 4, INC. d/b/a Drumright Regional Hospital, CAH ACQUISITION COMPANY 12, LLC, d/b/a/ Fairfax Community Hospital, CAH ACQUISITION COMPANY 16, LLC, d/b/a Haskell County Community Hospital, and CAH ACQUISITION COMPANY 7, LLC, d/b/a Prague Community Hospital, <br><br>Plaintiffs, <br><br>v. <br><br>HEALTH CARE SERVICE CORPORATION d/b/a Blue Cross and Blue Shield of Oklahoma, <br><br>Defendant. | Case No. 17-CV-0629-CVE-JFJ |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Combined Motion for Remand and Brief in Support of Motion for Remand (Dkt. # 31). Plaintiffs argue that the notice of removal (Dkt. # 2) does not contain a plausible allegation that the amount in controversy exceeds $75,000 as to each plaintiff, and plaintiffs ask the Court to remand the case to Tulsa County District Court. This case is set for an evidentiary hearing December 21, 2017 on defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Oklahoma's (Blue Cross) motion to vacate an ex parte temporary restraining order (TRO) entered by the state court before the case was removed. The Court has reviewed the motion to remand and finds that it can rule on the motion without additional briefing from the parties.

**I.**

Each plaintiff is an entity that operates a hospital in a rural community in Oklahoma, and plaintiffs allege that each has been an in-network provider for Blue Cross for over a decade. Dkt. # 2-3, at 5. Between April and July 2015, each plaintiff entered a new provider agreement with Blue Cross, and the provider agreements had a term of two years. Id. at 5. According to plaintiffs, each of the provider agreements would expire on October 29, 2017. Id. Each provider agreement states that:

> Both parties agree that no later than ninety (90) days prior to the end of the Contract Period representatives from each party will meet in good faith to discuss renewal of this Agreement and/or entering into a new agreement for Hospital's participation in The Plan's networks.

Id. Plaintiffs allege that Blue Cross submitted written proposals to enter a new provider agreement with plaintiffs, but the reduced reimbursement rates in the proposed provider agreements "would severely impact the financial viability of Plaintiffs and Plaintiffs' ability to provide critical access care to the communities served by Plaintiffs." Id. Plaintiffs claim that Blue Cross failed to negotiate in good faith within 90 days of expiration of the provider agreements. Id. Plaintiffs acknowledge that the parties had a "limited meeting" on October 3, 2017 and plaintiffs anticipated that more formal negotiations would continue after the meeting, but plaintiffs claim that Blue Cross failed to respond to plaintiffs' numerous messages and e-mails. Id. at 6. Plaintiffs claims that Blue Cross' behavior in this case is part of a larger pattern or practice intended to drive smaller, rural hospitals out business in order to favor larger, metropolitan hospitals. Id. Plaintiffs allege a claim of breach of contract against Blue Cross and they seek specific performance of the contractual duty to negotiate in good faith for renewal of the existing provider agreement or entry into a new provider agreement. Id. at 7.

On October 27, 2017, plaintiffs filed this case in Tulsa County District Court, and on the same day plaintiffs filed a motion for a TRO. Dkt. # 2-1, at 3-5. The state court judge granted plaintiffs' motion and entered a TRO without providing notice to Blue Cross. The TRO enjoins Blue Cross from terminating the provider agreements with plaintiffs until the parties have negotiated in good faith for an additional 90 days. Dkt. # 2-3, at 3. A hearing was set for November 20, 2017 on plaintiffs' request for a temporary injunction granting the same relief. Dkt. # 2-6. On October 30, 2017, Blue Cross was served with a summons, a copy of the petition, plaintiffs' motion for a TRO, the TRO, and the order setting a hearing on plaintiffs' request for a temporary injunction. Blue Cross removed the case to this Court on the basis of diversity jurisdiction. Plaintiff CAH Acquisition Company, Inc. d/b/a/ Drumright Regional Hospital is an Oklahoma corporation with its principal place of business in Oklahoma. Dkt. # 2, at 4. The remaining plaintiffs are limited liability companies organized under Oklahoma law with their principal places of business in Oklahoma. Id. at 4-5. The sole member of each limited liability company is HMC/CAH Consolidated, Inc., which is a Delaware Corporation with its principal place of business in Kansas City, Missouri. Id. Blue Cross is a mutual legal reserve company organized under Illinois law with its principal place of business in Chicago, Illinois. Id. at 5. Blue Cross acknowledges that plaintiff is not seeking monetary damages, but Blue Cross argues that the value of the litigation to plaintiff or the cost of the litigation to defendant exceeds $75,000.

## II.

Plaintiffs ask the court to remand this case to Tulsa County District Court, because the amount in controversy as to each plaintiff does not exceed $75,000. Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute.

3

Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994). A case must be remanded to state court if at any time before final judgment it appears the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Blue Cross asserts that this Court has jurisdiction under 28 U.S.C. § 1332(a)(1). Dkt. # 2, at 1. Section 1332(a)(1) grants federal courts jurisdiction over civil actions in which the matter in controversy exceeds $75,000 and the suit is between citizens of different states.[1] 28 U.S.C. § 1332(a). "In cases seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006) (quoting Hunt v. Wash. State. Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). The Tenth Circuit follows the "either viewpoint rule," which considers either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum. Id.; see also Smith v. Adams, 130 U.S. 167, 175 (1889) ("It is conceded that the pecuniary value of the matter in dispute may be determined . . . by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment.").

In a notice of removal, the defendant is required to include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). If the plaintiff contests, or the court questions, the removing defendant's allegations regarding the amount in controversy, the defendant must prove by a preponderance of the evidence jurisdictional facts that make it possible that $75,000 is at issue. See McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008). The Tenth Circuit had identified

---

[1] Plaintiffs do not dispute that the diversity of citizenship requirement is met in this case.

several methods that a removing defendant may use to prove the jurisdictional facts by a preponderance of the evidence when the complaint relies on state court pleading rules that do not require the plaintiff to allege a specific amount of damages. First, the defendant may rely on facts stated in the complaint to estimate the amount of damages plaintiff is seeking. Id. at 955-56. Second, a defendant may rely on other documents, such as discovery responses, affidavits, or other "summary-judgment-type evidence" that may be in defendant's possession. Id. at 956 (citing Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)). Third, any settlement offers between the parties suggesting that the amount in controversy exceeds $75,000 should be considered by the district court. Id. Once the removing defendant has sufficiently proven jurisdictional facts, the defendant "is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." Id. at 954.

Plaintiffs contest that the amount in controversy exceeds $75,000 as to each plaintiff and the Court must consider whether defendant has established the amount in controversy by a preponderance of the evidence. Blue Cross acknowledges that plaintiffs are not seeking monetary damages, but it argues that the cost it would incur to comply with the preliminary injunction sought by plaintiffs would exceed $75,000 as to each defendant. Blue Cross assumes that Court would order the parties to leave the existing provider agreements in place and order the parties to continue negotiating. Dkt. # 2, at 7. Blue Cross has provided evidence concerning the amounts paid to each plaintiff for the twelve months immediately preceding the filing of this case, and these amounts range from $185,092 to $512,300. Dkt. # 2-10, at 3. Blue Cross has provided an affidavit from Laura Hottel, a director of network management for Blue Cross, and she states that Blue Cross would anticipate paying all plaintiffs, except for CAH Acquisition Company 12, LLC d/b/a Fairfax

5

Community Hospital, more than $75,000 even if the case were to last only the minimum 90 day time period that plaintiffs seek for extended contractual negotiations. Blue Cross argues that the litigation is likely to extend well beyond the 90 day time period, because plaintiffs will seek to keep the existing provider agreements in place from the date that plaintiffs believe good faith negotiations actually begin. Id. at 7 n.5. Blue Cross argues that the provider agreements have expired under their own terms, and any amounts paid by Blue Cross to plaintiffs after October 29, 2017 should be considered as part of the amount in controversy. Blue Cross states that patients with Blue Cross as their primary health insurer could visits plaintiffs' hospitals on an out-of-network basis, but payments for treatment at an out-of-network hospital are made directly to the insured and the hospital does not directly receive such payments. Dkt. # 2, at 8; Dkt. # 2-10, at 4. In other words, Blue Cross no longer has any obligation to make payments directly to plaintiffs but for the TRO entered by state court, and Blue Cross argues that the full amount of any payments made to plaintiffs because of this litigation should be deemed part of the amount in controversy.

Plaintiffs argue that persons insured by Blue Cross will still seek treatment at the hospitals operated by plaintiffs, and it is not reasonable to assume that all payments made by Blue Cross after the expiration of the provider agreements would be incurred only because of this litigation. Dkt. # 31, at 5. Plaintiffs also argue that the figures stated in Hottel's affidavit significantly inflate the cost of the litigation to Blue Cross, because the true measure of the harm to Blue Cross would be the difference between the rates paid under the existing provider agreements and the rates that Blue Cross claims that it pays to other similarly-situated hospitals. Id. at 7. They ask the Court to reject Blue Cross' argument that payments made on an out-of-network basis should not be considered as payments to plaintiffs, because any amounts paid to the insured would be for medical treatment

6

provided at plaintiffs' hospitals and the insured would simply forward the money to plaintiffs. Id. at 8.

The Court will initially consider the anticipated duration of this litigation and any injunction, because this is a significant factor in determining whether the amount in controversy exceeds $75,000. In their motion to remand, plaintiffs argue that the only time period that should be considered is the "object of the litigation," rather than the duration of the litigation. Dkt. # 31, at 5. They claim that the 90 day period of time for good faith negotiations is the object of the litigation, and the only impediment in beginning the 90 day clock is defendant's unwillingness to begin good faith negotiations. Id. However, the evidence submitted by the parties and even the allegations of plaintiffs' petition call into question whether defendant could unilaterally begin the "good faith" negotiations contemplated by plaintiffs. The petition states that Blue Cross did submit written proposal for new provider agreements, but plaintiffs do not deem these to be good faith offers due "drastic cuts to reimbursement rates." Dkt. # 2-3, at 5. Blue Cross has provided evidence that it initially made offers to plaintiffs in March 2017 and made it least three different contract proposals between March and July 2017. Dkt. # 9-1, at 5-7. There is no dispute that contractual negotiations have taken place as early as March 2017, but the issue raised by plaintiffs is whether any "good faith" negotiations have occurred. Plaintiffs' position appears to be that good faith negotiations will begin when it receives what it deems to be a reasonable offer from defendants and, under this standard, the 90 day clock may never begin unless defendant makes such an offer. The Court rejects plaintiffs' argument that only the 90 day time period for conducting "good faith" negotiations should be considered in determining the amount in controversy, because plaintiffs' litigation position that such good faith negotiations have not actually begun suggests that the actual

7

time period for the injunction sought by plaintiffs could run indefinitely until plaintiffs receive what they deem to be a "good faith" offer. This case has already been pending for nearly two months and the case would continue for at least another 90 days if good faith negotiations were to begin immediately, and the Court will assume that the case will last at least five months in considering if the amount in controversy exceeds $75,000 as to each plaintiff.

Plaintiffs argue that the cost of the litigation to defendant should be measured by the difference between the higher payment rates in the existing provider agreements and the lower rates offered by Blue Cross. Using this approach would call into question whether Blue Cross would end up paying at least an additional $75,000 to each plaintiff, because the full amount of payments made by Blue Cross pursuant to a preliminary injunction would not be treated as part of the amount in controversy. For example, plaintiffs argue that Blue Cross estimates that it paid $185,092 to Fairfax during the 12 months preceding this litigation. Dkt. # 31, at 7. Plaintiffs state that Blue Cross has offered to pay reimbursement rates approximately 34 percent less than the existing rates, and this would result in an overpayment of $62,931 if the Court were to enter a preliminary injunction that remained in effect for 12 months. Plaintiffs argue that the duration of the litigation will actually be much less than 12 months and that the amount in controversy will not be met as to any of the plaintiffs. However, Blue Cross argues that it engaged in good faith negotiations with plaintiffs and it had the right to refuse to enter a new contract with plaintiffs once the existing agreement expired on October 29, 2017. Dkt. # 2, at 8. Blue Cross does not deny that its insured could continue to seek treatment at plaintiffs' facilities, but any future payments would be made on an out-of-network basis and the payments would be made directly to the insured. Id. In plaintiffs' motion to remand, they argue that even under this theory the payments to the insured should be treated as payments to

the hospital, because the insured would simply pay the money over to hospital. Dkt. # 31, at 8. In plaintiffs' objection to defendants' motion to vacate the TRO, plaintiffs take a completely different position and argue there is a substantial risk that the insured will simply deposit payments for out-of-network services and that plaintiffs will not actually receive any payment from the insured. Dkt. # 30, at 7. This position is consistent with the argument advanced by Blue Cross in the notice of removal, and the Court finds that payments made to an insured for out-of-network health care should be treated as payments to the insured, rather than to the hospital.[2]

The Court finds that Blue Cross has established by a preponderance of the evidence that the amount in controversy exceeds $75,000 as to each plaintiff. Plaintiffs seek a preliminary injunction requiring Blue Cross to reimburse plaintiffs at the rates provided under agreements that were negotiated in 2015, and the proposed injunction would last for the duration of the case. The parties do not dispute that the provider agreements expired on October 29, 2017 and that the parties have not agreed to new provider agreements extending their relationship beyond that date. Blue Cross no longer has a contractual obligation to make payments directly to plaintiffs except for the fact that the state court entered a TRO keeping the terms of the existing provider agreements in place. For the purpose of determining the amount in controversy, the Court assumes that Blue Cross has no contractual relationship with plaintiffs and it is not obligated to make any payments directly to plaintiffs. Using this approach, the Court will rely on the evidence submitted by Blue Cross as to

---

[2]    The Court also notes that it would not be reasonable to use the methodology advocated by plaintiffs for another reason. Plaintiffs vehemently argue that defendant's offers for new provider agreements included drastic rate cuts and the offers were not made in good faith. There is nothing in plaintiffs' petition or other filings that suggests plaintiffs would accept such offers. It would make little sense for the Court to calculate the difference between the existing rates and the lower rates in defendant's proposed provider agreements when plaintiffs have made it clear that they do not believe the offers were made in good faith.

the full amounts it paid to each plaintiff over the 12 months prior to the filing of this case, because Blue Cross has made a plausible allegation that it will be harmed if it is ordered to continue to make payments to plaintiffs under the existing provider agreements. Fairfax is the plaintiff with the lowest amount of covered medical services submitted to Blue Cross during the twelve months preceding this litigation, and the Court will use the minimum duration of five months to determine if the amount in controversy exceeds $75,000 as to Fairfax. Fairfax submitted $185,092 in claims for covered medical claims for the 12 months preceding this lawsuit, and the average monthly payment from Blue Cross to Fairfax would be $15,424. Over five months, Blue Cross would pay $77,121 to Fairfax and this exceeds the jurisdictional amount necessary to establish diversity jurisdiction. This means that the average payments to the other plaintiffs would also exceed $75,000 over a five month period, and defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 as to each defendant. The Court has jurisdiction over this case and plaintiff's motion to remand should be denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' Combined Motion for Remand and Brief in Support of Motion for Remand (Dkt. # 31) is **denied**.

**DATED** this 20th day of December, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE